JOHN A. LIBRA
jlibra@koreintillery.com
p: 312.641.9750
f: 312.641.9751

## KOREIN TILLERY

*Attorneys at Law*

205 North Michigan, Suite 1950
Chicago, Illinois  60601-4269

www.koreintillery.com

October 1, 2015

**VIA ECF AND HAND DELIVERY**

Hon. Richard M. Berman
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 17B
New York, NY 10007

Re:     *BlackRock Balanced Capital Portfolio (FI), et al. v. Deutsche Bank National Trust Company, et al.*, **No. 14-cv-9367-RMB**

*BlackRock Allocation Target Shares: Series S Portfolio, et al. v. Wells Fargo Bank National Association, et al.*, **No. 14-cv-9371-RMB**

*Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.*, **No. 14-cv-9764-RMB**

*National Credit Union Administration Board, et al. v. Wells Fargo Bank, Nat'l Ass'n*, **No. 14-cv-10067-RMB**

*Phoenix Light SF Ltd., et al. v. Wells Fargo Bank, N.A*, **No. 14-cv-10102-RMB**

Dear Judge Berman:

On behalf of Plaintiffs in the above-referenced actions, we write to bring to the Court's attention the attached opinion issued on September 29, 2015, in an action asserting nearly identical claims against another RMBS trustee, The Bank of New York Mellon.  *See Phoenix Light SF Limited, et al. v. The Bank of New York Mellon*, No. 14-cv-10104 (VEC) (S.D.N.Y. Sept. 29, 2015), (Caproni, J.), ECF No. 53, ("*Phoenix Light-BNYM*").  *Phoenix Light-BNYM* is relevant to Defendants' pending motion to dismiss.

In *Phoenix Light-BNYM*, Judge Caproni joined numerous other district courts in rejecting pleading challenges similar to those that Defendants raise here to the claims for breach of

*One US Bank Plaza*
*505 North 7th Street, Suite 3600*
*Saint Louis, Missouri  63101*
*Tel:  314.241.4844 Fax:  314.241.3525*

contract related to the RMBS trustee's knowledge of events of default (*id.* at 6-9), that there was a breach relating to the RMBS trustee not complying with heightened duties after it was aware of events of defaults associated with incomplete mortgage files and the RMBS trustee breached its duty to provide notice of such defaults (*id.* at 9-10), and that there was a breach of the RMBS trustee's obligations as it relates to the underwriting of the mortgage loans (*id.* at 11-12). Judge Caproni also held that the plaintiffs adequately pled negligence and negligent misrepresentation claims (*id.* at 13-15), post-event of default claims for breach of the implied covenant of good faith and fair dealing (*id.* at 15-16), and violations of Sections 315(b) and (c) of the Trust Indenture Act of 1939.

Finally, Judge Caproni dismissed certain claims, including the plaintiffs' TIA claim for the trusts governed by Pooling and Servicing Agreements and alleged breaches of Sections 315(a) and 316(b) of the TIA, as well as the plaintiffs' breach of fiduciary duty and Streit Act claims (as to the Streit Act claims, we note that dismissal was contrary to the decision of Judge Scheindlin in *Royal Park Investments SA/NV v. HSBC Bank USA, Nat'l Ass'n*, No. 14-cv-10101 (SAS), 2015 WL 3466121, at *13-14 (S.D.N.Y. June 1, 2015), and thus creates a split of authority in this District).

Respectfully Submitted,

John A. Libra

cc:     Counsel of Record (via CM/ECF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌──────────────────────────────────────┐
│ USDC SDNY                             │
│ DOCUMENT                              │
│ ELECTRONICALLY FILED                  │
│ DOC #:_____                 │
│ DATE FILED:____9/29/2015_             │
└──────────────────────────────────────┘
```

-------------------------------------------------------------X

PHOENIX LIGHT SF LIMITED, in its own right : 
and on the right of Blue Heron Funding V Ltd., :
Blue Heron Funding VI Ltd., Blue Heron Funding :
VII Ltd., Blue Heron Funding IX Ltd., Kleros :
Preferred Funding V PLC, Silver Elms CDO PLC, :
Silver Elms CDO II Limited, C-BASS CBO XVII :
Ltd., and C-BASS CBO XIV Ltd., and each of :      14-CV-10104 (VEC)
BLUE HERON FUNDING V LTD., BLUE :
HERON FUNDING VI LTD., BLUE HERON :
FUNDING VII LTD., BLUE HERON FUNDING :
IX LTD., KLEROS PREFERRED FUNDING V :
PLC, SILVER ELMS CDO PLC, and SILVER :
ELMS CDO II LIMITED, in their own right, :
                          :

                        Plaintiffs, :      <u>OPINION & ORDER</u>
                          :
                          :
           -against- : 
                          :

THE BANK OF NEW YORK MELLON, as :
Trustee, :
                          :
                      Defendant. :

-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

      This is another of the seemingly-endless stream of derivative actions brought by plaintiffs

who lost money that had been invested in residential mortgage-back securities ("RMBS") when

the housing market collapsed. *See Fixed Income Shares: Series M v. Citibank N.A.*, --- F. Supp.

3d ---, ---, No. 14-CV-9373(JMF), 2015 WL 5244707, at *1 (S.D.N.Y. Sept. 8, 2015).[1] Plaintiffs

---

[1]     Plaintiff Phoenix Light in particular has initiated many similar cases. *See, e.g., Phoenix Light SF Ltd. v. HSBC Bank USA, Nat'l Ass'n*, No. 14-CV-10101(SAS) (S.D.N.Y. filed Dec. 23, 2014); *Phoenix Light SF Ltd. v. Wells Fargo Bank, N.A.*, No. 14-CV-10102(RMB)(SN) (S.D.N.Y. filed Dec. 23, 2014); *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-10103(JGK) (S.D.N.Y. filed Dec. 23, 2014); *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, No. 14-CV-10116(KBF) (S.D.N.Y. filed Dec. 24, 2014); *Phoenix Light SF Ltd. v. Goldman Sachs Grp., Inc.*, No. 652356/2013, 993 N.Y.S.2d 645 (table) (Sup. Ct. N.Y. Cnty. June 13, 2014); *Phoenix Light SF Ltd. v. ACE Sec. Corp.*, No. 650422/2012, 975 N.Y.S.2d 369 (table) (Sup. Ct. N.Y. Cnty. Apr. 24, 2013). Defendant is also no stranger to this type of litigation. *See, e.g., Ret. Bd. of Policemen's Annuity & Benefit Fund of City of Chi.*

allege that Defendant, Bank of New York Mellon ("BNYM"), breached its contractual, fiduciary, statutory, and common-law duties as Trustee to 27 securitization trusts ("Covered Trusts"). Plaintiffs assert causes of action for violations of the Trust Indenture Act of 1939 ("TIA"), 15 U.S.C. § 77aaa *et seq.*, First Am. Compl. ("FAC") ¶¶ 399-408; breach of contract, *id.* ¶¶ 409-17; breach of fiduciary duty, *id.* ¶¶ 418-21; negligence and gross negligence, *id.* ¶¶ 422-24; negligent misrepresentation, *id.* ¶¶ 425-31; violations of New York State's Streit Act, N.Y. Real Property Law § 124 *et seq.*, *id.* ¶¶ 432-41; and breach of the covenant of good faith and fair dealing, *id.* ¶¶ 442-46. Defendant moves to dismiss all of Plaintiffs' claims.

For the reasons that follow, Defendant's motion is granted in part and denied in part. Plaintiffs' claim for breach of the covenant of good faith and fair dealing is dismissed insofar as it relates to any conduct prior to the Trustee's having knowledge of an Event of Default; Plaintiffs' TIA claim is dismissed as it relates to the trusts governed by Pooling and Servicing Agreements ("PSAs") and as to alleged breaches of Sections 315(a) and 316(b) of the TIA; and Plaintiffs' breach of fiduciary duty and Streit Act claims are dismissed in their entirety.

## BACKGROUND[2]

The Court assumes familiarity with RMBS in general and with most of the facts in this case. The 27 trusts at issue here are of two main types – 24 are New York common law trusts governed by a PSA (the "PSA Trusts"), and three are Delaware trusts governed by a Servicing Agreement and an Indenture (the "Indenture Trusts"). FAC ¶¶ 1, 7 & n.1. The trusts' assets are

---

*v. Bank of N.Y. Mellon*, 914 F. Supp. 2d 422, 424 (S.D.N.Y. 2012) ("*Policemen v. BNYM I*") ("This case is another installment in litigation over BNYM's obligations as trustee for hundreds of securitization trusts.").

[2]    For the purpose of this Opinion the Court assumes the truth of the allegations in the FAC and recites them herein as if they were facts. *See Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 415 (2d Cir. 2014). The Court also relies on the documents included in the FAC by reference. *See Taveras v. UBS AG*, 708 F.3d 436, 442 (2d Cir. 2013).

pools of residential mortgage-backed loans; Plaintiffs possess RMBS certificates entitling them
to interests in the cash flow generated from loan payments. *Id.* ¶¶ 3-4.

The mechanism by which the trusts are created has been discussed in detail in previous
opinions; it will be summarized only briefly here. *See, e.g.*, *Fixed Income*, --- F. Supp. 3d at ---,
2015 WL 5244707, at *1-2. First a "sponsor" or "seller" (for example, Countrywide Home
Loans, Inc.) acquires a mortgage loan. FAC ¶ 31. The sponsor creates a "pool" of loans and
sells the pool to a "depositor," which is frequently "a special-purpose affiliate of the sponsor."
*Id.* The depositor, pursuant to a PSA or analogous agreement, conveys the pool to the trust; the
pool is divided into various prioritized "tranches." *Id.* ¶ 32. The trust issues certificates for each
tranche to an underwriter, which re-sells the certificates. *Id.* The depositor profits in the amount
of the difference between the cost of obtaining the loans in the first place and the price obtained
from the underwriter. *Id.* Servicers, sometimes referred to as "Master Servicers," collect
payments on the underlying loans and distribute the proceeds to certificateholders (such as
Plaintiffs); the Servicers are also responsible for taking any enforcement action against
delinquent borrowers, foreclosing on defaulted loans, and monitoring additional information
related to the underlying loans. *Id.* ¶ 33. The Trustee – in all trusts at issue here, BNYM –
delivers monthly reports to the certificateholders describing the performance of the underlying
loans. *Id.* ¶ 34. The required content of the Trustee's reports is specified by contract. *Id.* For its
efforts, the Trustee earns "an annual fee based on the percentage of principal outstanding on the
loans underlying the RMBS." *Id.* ¶ 37.

The role of the Trustee in the context of the RMBS Trust is distinct from those of an
"ordinary trustee," which might have duties extending well beyond the agreement. *Cf. AG
Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*, 11 N.Y.3d 146, 156 (2008); *see
also Fixed Income Shares*, --- F. Supp. 3d at ---, 2015 WL 5244707, at *2. BNYM's duties are

set forth in the PSAs and the indenture agreements. FAC ¶¶ 7, 38. These duties are considerably

different prior to a so-called Event of Default than after. *Id.* ¶ 54. Prior to an Event of Default,

BNYM has largely ministerial duties, including taking physical possession of complete mortgage

files, *id.* ¶¶ 40-41; preparing certifications of the status of the mortgage loan files, *id.* ¶¶ 44-49;

and providing notice to all parties whenever there is a breach of a representation or warranty by

the Servicers, sponsors, or loan originators, with respect to a loan, *id.* ¶ 51, or of any breach by

the Servicers, *id.* ¶¶ 52-53.

   If BNYM knows that there has been an Event of Default, then it "assumes the same

duties as a common law trustee," including "providing beneficiaries notice of all defaults under

the operative trust documents," *id.* ¶ 54, and exercising "the same degree of care and skill in their

exercise [of their rights under the PSA] as a prudent person would exercise under the

circumstances in the conduct of such person's own affairs," *id.* ¶ 58 (quotation marks omitted).

Under the PSA Trusts, an Event of Default may be triggered by a:

> failure by the [] Servicer to observe or perform in any material respect any other of
> the covenants or agreements . . . in this Agreement[,] which failure materially
> affects the rights of Certificateholders, that failure continues unremedied for a
> period of 60 days after the date on which written notice of such failure shall have
> been given to the [] Servicer by the Trustee or the Depositor, or to the [] Servicer
> and the Trustee by the Holders of Certificates evidencing not less than 25% of the
> Voting Rights evidenced by the Certificates; provided, however, that the sixty-day
> cure period shall not apply to the initial delivery of the Mortgage File for Delay
> Delivery Mortgage Loans nor the failure to substitute or repurchase in lieu of
> delivery.

*Id.* ¶ 73 (quoting § 7.01 of the Countrywide PSA) (alteration and emphasis omitted). Some of

the PSAs also provide that "failure to follow prudent servicing standards is an Event of Default

30-60 days after a Servicing Officer becomes aware of such breach." *Id.* ¶ 74. Under the

Indenture Trusts, the failure of the issuer to perform its obligations under the Indenture

Agreement constitutes an Event of Default. *See, e.g.*, *id.* ¶¶ 328-31.

4

The FAC alleges a number of Events of Default, *see, e.g.*, *id.* ¶¶ 316-34; and additional breaches that – but for BNYM's failure to provide notice – "would have ripened" into Events of Default if left unremedied, *see, e.g.*, *id.* ¶ 148. These alleged Events of Default include the Servicers': failing "to ensure that the Sponsors cured document exceptions identified on BNY Mellon's Final Certification," *id.* ¶ 316; failing "to adhere to prudent servicing standards" after specified periods of time, *id.* ¶ 325; and providing false certifications relating to their performance, *id.* ¶¶ 332-34.

Plaintiffs allege that BNYM breached both its pre- and post-Event of Default duties when it learned that the trusts contained a substantial number of loans as to which the seller or Servicer had failed to comply with its contractual obligations and failed to take appropriate action. *Cf. Fixed Income*, --- F. Supp. 3d at ---, 2015 WL 5244707, at *3.

## DISCUSSION

BNYM moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 120 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). When, as here, Plaintiffs allege facts from which the Court must infer liability – as opposed to alleging facts that, if proven, would definitively establish liability – the pleading standard is particularly critical. "[F]actual content that is 'merely consistent with,' rather than suggestive of, a finding of liability will not support a reasonable inference." *Id.* at 121 (quoting *Twombly*, 550 U.S. at 556). But a "reasonable inference" in the context of a complaint pled

5

under Federal Rule of Civil Procedure 8, like the FAC, "need not be 'as compelling as any opposing inference' one might draw from the same factual allegations." *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)). "[T]he existence of other, competing inferences does not prevent the plaintiff's desired inference from qualifying as reasonable unless at least one of those competing inferences rises to the level of an 'obvious alternative explanation.'" *Id.*

## I.    Breach of Contract

BNYM moves to dismiss Plaintiffs' breach of contract claims. To allege a breach of contract under New York law,[3] Plaintiffs must allege "the existence of a contract, the plaintiff[s'] performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." *El-Nahal v. FA Mgmt., Inc.*, 126 A.D.3d 667, 668 (2d Dep't 2015). At this stage, Defendant challenges only the allegations regarding the existence of a breach.

### A.  Plaintiffs Allege Knowledge of Events of Default

Many of Plaintiffs' breach of contract claims revolve around the occurrence of Events of Default. Defendant appears to concede, for the purpose of this motion, that if the FAC adequately alleges that BNYM was aware of an Event of Default, then it alleges that BNYM breached duties that were otherwise not triggered. Plaintiffs appear to concede that they must allege not only that Events of Default occurred, but that BNYM had actual knowledge of such Events. *See* Pl. Mem. at 19-21.

The low bar at the motion to dismiss stage salvages Plaintiffs' claims for now. Plaintiffs do not allege facts that inexorably lead to the conclusion that BNYM had actual knowledge that

---

[3]    Both parties assume that New York law applies to all claims; accordingly, the Court applies New York law. *Cf. Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014).

the Servicers were in breach as to any particular trust.  *Cf. Ret. Bd. of Policemen's Annuity & Benefit Fund of City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) ("*Policemen v. BNYM II*").  But at this stage it is sufficient for Plaintiffs to allege facts that plausibly suggest a likelihood that BNYM had the requisite knowledge.  *Royal Park Invs. SA/NV v. HSBC Bank, Nat'l Ass'n*, --- F. Supp. 3d ---, ---, No. 14-CV-8175(SAS), 2015 WL 3466121, at *10 (S.D.N.Y. June 1, 2015) ("[A]t trial or summary judgment, plaintiffs must produce proof of actual knowledge . . . . At the pleading stage, however, plaintiffs have met their burden.");  *Policemen's Annuity & Benefit Fund of City of Chi. v. Bank of Am., NA*, 943 F. Supp. 2d 428, 442 (S.D.N.Y. 2013) ("*Policemen v. BoA II*") ("The gravamen of defendants' arguments is that plaintiffs have to be able to allege unequivocally that defendants had actual notice in order to state a claim.  That, however, mistakes the standard of proof with the plausibility required at the pleading stage.");  *but see Knights of Columbus v. Bank of N.Y. Mellon*, No. 651442/2011, July 10, 2015 Opinion at 8 (Sup. Ct. N.Y. Cnty. July 10, 2015) ("*Knights*").  Judge Furman's analysis of the Trustee's knowledge in the *Fixed Income* case is particularly instructive.  There, as here, Plaintiffs relied in part on "high mortgage loan delinquency rates," the Trustee's knowledge of "widespread breaches of representations and warranties because of its involvement with other RMBS trusts in various capacities," and "other high profile litigation and settlements regarding the same originators and sponsors as those involved with the Trusts."  *Compare Fixed Income*, --- F. Supp. 3d at ---, 2015 WL 5244707, at *10, *with* FAC ¶¶ 145, 130-36, 151-52.

Defendant claims that the FAC alleges only that BNYM "*should have* uncovered servicer breaches, . . . presum[ing] that a Trustee has a duty to act as a prudent person to determine *whether* there was an Event of Default."  Def. Mem. at 21.  That mischaracterizes Plaintiffs' theory.  Plaintiffs argue that BNYM was on notice of so many deficiencies surrounding the mortgages – including missing paperwork, underwriting failures, and other seller breaches – that

it surely would have conducted a minimal, albeit (perhaps) not contractually required,
investigation that would have unearthed the Servicer misconduct, which, Plaintiffs allege,
constitutes one or more Events of Default. *Accord Policemen's Annuity & Benefit Fund of City
of Chi. v. Bank of Am., NA*, 907 F. Supp. 2d 536, 554 (S.D.N.Y. 2012) ("*Policemen v. BoA I*").

 Although Plaintiffs have adequately alleged facts supporting that theory, they are
cautioned that at the summary judgment stage or at trial they will be required to adduce actual
evidence from which a reasonable factfinder could conclude that BNYM had actual knowledge
of Events of Default.  At the pleadings stage, however, this Court joins the chorus of district
courts holding similar allegations to plausibly allege that the Trustee had actual knowledge of
Events of Default.  *See, e.g.*, *Fixed Income*, --- F. Supp. 3d ---, 2015 WL 5244707, at *10; *Royal
Park*, --- F. Supp. 3d ---, 2015 WL 3466121, at *9-10; *VNB Realty, Inc. v. U.S. Bank, N.A.*, No.
13-CV-4743(WJM), 2014 WL 1628441, at *4 (D.N.J. Apr. 23, 2014); *Policemen v. BoA II*, 943
F. Supp. 2d at 443; *Ret. Bd. of Policemen's Annuity & Benefit Fund of City of Chi. v. Bank of
N.Y. Mellon*, 914 F. Supp. 2d 422, 431 (S.D.N.Y. 2012) ("*Policemen v. BNYM I*"), *abrogated on
other grounds by Policemen v. BNYM II*, 775 F.3d at 159.

 As to some of the Trusts, as a matter of contract, BNYM is only "on notice" of an Event
of Default when it receives written notice of the default – notice that BNYM claims it did not
receive.  The FAC alleges, however, that BNYM was the party charged with providing "written
notice" of breaches that – if BNYM had in fact provided the notice – would have "ripen[ed] into
an Event of Default if left unremedied."  FAC ¶ 52.  To the extent that BNYM argues that its
failure to remit the required notice of such defects shields it from liability, the Court is
unpersuaded.  *See Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, 291 F.R.D. 47, 70
(S.D.N.Y. 2013) ("[T]he trustee cannot rely on its own failure to give notice to escape its own
liability.") *abrogated on other grounds by Policemen v. BNYM II*, 775 F.3d at 159.  The FAC

clearly alleges that the Trustee was charged with providing "prompt written notice" whenever it discovered a breach that had an adverse effect on "the value of any Mortgage Loan, Prepayment Charge or the interests therein of the Certificateholders." FAC ¶ 53 (quotation marks and citation omitted). The FAC also alleges that BNYM received written notice of some categories of breaches from the Association of Mortgage Investors, *id.* ¶ 335, and from "a group of institutional investors" that was specific to defaults by the Servicer in a number of the PSA-governed trusts, *id.* ¶ 336.[4]

Finally, BNYM moves to dismiss as to the Indenture Trusts, alleging that they require a breach by the issuer, not the Servicer. Def. Mem. at 24. As to one Trust, FNLC 2005-1, any Servicer breach "triggered Events of Default under the Indenture." FAC ¶ 327 n.7. As to the others, the FAC alleges that the Trustee provided the issuer with notice of depositor breaches which, the FAC claims, triggered additional issuer duties that were ultimately breached. *Id.* ¶ 330. Moreover, the FAC alleges that the issuer failed to take necessary and advisable actions to enforce the Trust's rights – for example, by enforcing the sponsors' or originators' repurchase obligations that were triggered by warranty violations. *Id.* ¶¶ 328-31. The FAC's allegations are sufficient to state a claim as to the Indenture Trusts. *Accord Okla. Police*, 291 F.R.D. at 66-67; *Policemen v. BNYM I*, 914 F. Supp. 2d at 431-32.

**B. Plaintiffs Allege a Breach as to the Completeness of Mortgage Files**

Defendant seeks to dismiss Plaintiffs' allegation that BNYM breached the contracts by failing to take physical possession of complete mortgage files. FAC ¶¶ 79-125. Although it is

---

[4]       The parties dispute whether that notice was "rescinded by the parties." To demonstrate that the notice was rescinded, Defendant submitted materials in support of its motion to dismiss that were neither "incorporated by reference" nor "relied upon in any way" by the FAC. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010). The Court has not considered those materials, but notes again that Plaintiffs must be prepared to face a higher level of scrutiny at the summary judgment or trial stage.

not clear that the FAC alleges such a breach, Defendant's motion is granted as to any claim that

BNYM breached by being delivered incomplete files. *Accord Knights* at 3.[5]

      The parties disagree as to the scope of the Trustee's obligations with respect to the

mortgage files. For the reasons discussed *supra*, however, the FAC plausibly alleges that

BNYM was on notice of Events of Default associated with incomplete mortgage files. *See, e.g.*,

*Policemen v. BNYM I*, 914 F. Supp. 2d at 431 (in a directly analogous case against BNYM,

Plaintiffs adequately "allege[d] that [the Servicers] breached the PSAs by failing to provide

mortgage loan files in their possession, to cure defects in the mortgage loan files and/or to

substitute the defective loans with conforming loans") (internal quotation marks omitted); *see*

FAC ¶ 125 ("BNY Mellon was aware that the . . . Servicers breached the PSAs by failing to

provide complete mortgage files in their possession."); *id.* ¶ 322 (the "Servicer's failure to cause

the repurchase or substitution of [some defective loans] is an Event of Default"); *id.* ¶ 337 ("The

Master Servicer failed to cure" defects pertaining to the quality of the loan files, *inter alia*.).

      If BNYM was aware of an Event of Default regarding incomplete mortgage files, it was

required to assume heightened duties. *See* Def. Mem. at 12.[6] Accordingly, the FAC adequately

alleges that BNYM breached the contract by not complying with its heightened duties after it had

knowledge of an Event of Default; the Court need not determine whether, in the absence of such

a default, Plaintiffs' correctly characterize the Trustee's duties under the contract.

---

[5]     The FAC does, however, allege that BNYM was obligated to notify the relevant parties when the mortgage file was incomplete. *See, e.g.*, FAC ¶¶ 9, 78-79, 82. The Court does not decide whether the sellers' failures to deliver complete documentation could form the basis for an Event of Default that led to other breaches.

[6]     Perhaps because BNYM insists that the FAC does not plausibly allege that it was aware of an Event of Default, BNYM does not argue that any such awareness was gleaned *after* the occurrence of the facts that the FAC alleges were breaches. Accordingly, the Court does not reach this issue, but Plaintiffs are again put on notice that to prevail on their claims, they will need to establish either that BNYM breached its pre-Event of Default duties, or that BNYM obtained actual knowledge of an Event of Default prior to the conduct that Plaintiffs allege constituted a breach.

### C. Plaintiffs Allege a Breach as to the Underwriting of the Mortgage Loans

For the same reasons, Plaintiffs state a claim that BNYM breached the contracts by failing to provide notice of "numerous breaches of representation and warranty provisions . . . that the mortgage loans had been underwritten in accordance with applicable underwriting guidelines." FAC ¶ 10. Defendant, relying on the Second Circuit's recitation that "BNYM's alleged misconduct must be proved loan-by-loan and trust-by-trust," *Policemen v. BNYM II*, 775 F.3d at 162, contends that generalized arguments establishing that BNYM had (or should have had) notice that a substantial number of loans in general were not properly underwritten is insufficient to sustain a complaint. The language on which Defendant relies, however, pertains to a class standing argument and looks way down the road from where we are to the proof that Plaintiffs would need to proffer to prevail on the merits – not the level of proof necessary to raise a reasonable inference that Defendant is liable. *Id.* at 162-63. For substantially the same reasons articulated by Judge Scheindlin in *Royal Park*, the Court rejects Defendant's attempt to import the Second Circuit's discussion into the pleadings context. *Royal Park Invs. SA/NV*, --- F. Supp. 3d at ---, 2015 WL 3466121, at *6-7;[7] *see also Knights* at 6.

At this stage, BNYM does not dispute Plaintiffs' allegations that BNYM failed "to investigate and give notice of breaches" as required if it had actual knowledge of an Event of

---

[7]      Plaintiffs allege facts that, in their totality, establish BNYM's knowledge of a high probability that the underwriters had breached their representations and warranties, including: the "alarming" delinquency rates incurred by the Trusts, FAC ¶ 145; well-publicized public information (including lawsuits) regarding the Originators' systematic divergence from standard underwriting practices, *id.* ¶¶ 139-42, 145, 166-68, 186-88; and other issues specific to RMBS trusts in which BNYM was Trustee, *id.* ¶ 136. The FAC's allegations relative to BNYM's knowledge are therefore *suggestive* that it knew that the underwriters had failed to comply with the representations and warranties in the PSAs. The FAC adequately alleges that BNYM was aware of the substantial probability that a pattern that applied to analogous mortgage loans also applied to the specific loans in the Trusts. Whether this knowledge *in fact* led BNYM to learn of specific breaches relative to any particular individual loan is not the issue at the pleadings stage. *Royal Park Invs. SA/NV*, --- F. Supp. 3d at ---, 2015 WL 3466121, at *6-7; *see also ACE Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543, 560 (S.D.N.Y. 2014) (In the context of an action for repurchase, the complaint "need not contain specific allegations regarding each loan at issue . . . which notably does not relieve Plaintiff of its burden of proving loan-by-loan breaches at later stages of litigation" (internal quotation marks and citations omitted)).

Default.  Def. Mem. at 13.  Accordingly, Defendant's motion to dismiss Plaintiffs' breach of contract claim is denied.

**II.     Breach of Fiduciary Duty**

Defendant moves to dismiss Plaintiffs' cause of action for breach of fiduciary duty, arguing that it is duplicative of Plaintiffs' contract claim and that it otherwise does not state a claim.  "The elements of a claim for breach of a fiduciary obligation are: (i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (citing *Barrett v. Freifeld*, 64 A.D.3d 736, 739 (2d Dep't 2009)).

Under New York law, "a cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 193 (S.D.N.Y. 2011) (alteration, quotation marks, and citations omitted); *see also Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003) ("'[I]t is a well established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.'") (quoting *Clark-Fitzpatrick Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987)).  Some of Plaintiffs' allegations as to the "fiduciary duties" that BNYM held are recitations of BNYM's obligations pursuant to the PSAs; claims that BNYM breached its contractual obligations are therefore dismissed from the breach of fiduciary duty claim.  Similarly, Plaintiffs' claim is dismissed insofar as it relies on the assertion that BNYM did not perform ministerial acts with due care.  *Accord AG Capital*, 11 N.Y.3d at 158 ("'[F]iduciary obligations are wholly different from the performance of ministerial functions with due care."); *see* FAC ¶ 419(a)-(d).

Two components of Plaintiffs' breach of fiduciary duty claim are worth addressing separately.  First, Plaintiffs allege that BNYM violated "the duty of loyalty, which required it to

avoid conflicts of interest." Pl. Opp. at 28. Such an allegation does "allege the violation of extra-contractual duties." *Fixed Income*, --- F. Supp. 3d at ---, 2015 WL 5244707, at *13. But "conflict of interest allegations are properly pled under a negligence cause of action, not a breach of fiduciary or breach of loyalty cause of action." *VNB Realty*, 2014 WL 1628441, at *6 (citing *Ellington*, 837 F. Supp. 2d at 192); *see also Royal Park*, --- F. Supp. 3d at ---, 2015 WL 3466121, at *3 (the Trustee's duty to "avoid conflicts of interest" is "not construed as [a] *fiduciary* dut[y], but as [an] obligation[] whose breach may subject the trustee to *tort* liability") (emphasis in original, quotation marks and citation omitted).

Second, Plaintiffs allege that an Event of Default triggered heightened duties, including a duty to make prudent decisions to protect the interests of the certificateholders. These heightened duties, however, appear to be subsumed within the language of the PSAs and indentures or else implied within their terms. *Cf. Ellington*, 837 F. Supp. 2d at 193 (describing the breach of fiduciary duty claims as "'merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract [and breach of the implied covenant of good faith and fair dealing]'") (quoting *Clark-Fitzgerald*, 70 N.Y.2d at 390)).

Accordingly, Plaintiffs' cause of action for breach of fiduciary duty is dismissed, with leave to replead insofar as Plaintiffs allege a difference in the scope of BNYM's express or implied contractual duties after an Event of Default and their fiduciary duties in the same context.

## III.    Negligence and Gross Negligence and Negligent Misrepresentation

Defendant moves against Plaintiffs' fourth cause of action (for negligence and gross negligence) and their fifth cause of action (for negligent misrepresentations). Defendant advances a number of arguments, but none is persuasive.

First, Defendant argues that part of Plaintiffs' claim is time-barred. The statute of limitations for negligence actions is three years. *5 Awnings Plus, Inc. v. Moses Ins. Grp., Inc.*, 108 A.D.3d 1198, 1200 (4th Dep't 2013) (citing N.Y. CPLR § 214). "In New York, a tort claim accrues when plaintiff can allege all of the legal elements that would allow her to seek redress for her injuries." *Hunter v. Deutsche Lufthansa AG*, No. 09-CV-3166(RJD), 2013 WL 752193, at *3 (E.D.N.Y. Feb. 27, 2013) (citing *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 96 (1993)). Plaintiffs argue, and BNYM does not contest, that *when* all elements of Plaintiffs' negligence claims, including damages, accrued cannot be resolved based on the pleadings in this case.

Second, Defendant alleges that Plaintiffs' negligent misrepresentation claim is governed by the strict pleading standard of Federal Rule of Civil Procedure 9(b). Although the Second Circuit has recognized that "[d]istrict court decisions in this Circuit have held that [Rule 9(b)] is applicable to such claims," it has reserved decision on that question. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004); *see also CAC Grp. Inc. v. Maxim Grp. LLC*, 523 F. App'x 802, 806 (2d Cir. 2013) (summary order) (declining to reach the issue); *Ellington*, 837 F. Supp. 2d at 200 (collecting cases). The Court need not address the question; Defendant does not respond to Plaintiffs' contention that, even under the strictures of Rule 9(b), the FAC's allegations are specific enough to pass muster. The FAC attributes specific alleged misstatements to BNYM in considerable detail – identifying the parts of the Forms 10-K that Plaintiffs allege were false and explaining why the statements were false. *See, e.g.,* FAC ¶¶ 345-48; 81-83 *see also id.* ¶ 38.

Finally, Defendant argues that language within the PSAs absolves BNYM from liability for negligence. If an agreement explicitly "exculpates [a party] from liability for negligence," then it is possible that no negligence claim would lie. *See Argonaut P'ship L.P. v. Bankers Trustee Co. Ltd.*, No. 96-CV-1970(LLS), 2001 WL 585519, at *2 (S.D.N.Y. May 30, 2001).

The PSAs do not, however, unambiguously bar a negligence action. *See, e.g.*, FAC Ex. C at 34 ("[T]he Trustee shall not be liable for an error of judgment made in good faith by a Responsible Officer of the Trustee unless it shall be proved that the Trustee was negligent in ascertaining or investigating the facts related thereto.") (quoting C-BASS PSA § 8.01(ii)). The Court follows other district courts in permitting a negligence cause of action to proceed under substantially identical contractual provisions. *Cf. Fixed Income*, --- F. Supp. 3d at ---, 2015 WL 5244707, at *13; *VNB Realty*, 2014 WL 1628441, at *7.

Accordingly, Defendant's motion to dismiss Plaintiffs' negligence and negligent misrepresentation claims is denied.

## IV.     Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendant moves to dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, contending that any claim is either duplicative of Plaintiffs' breach of contract claim or barred by express language in the PSAs limiting the Trustee's obligations to those contained in the agreements. The motion is granted as to any pre-Event of Default breach.

Plaintiffs concede that their claim relies on the same facts as their breach of contract claim but argue that a "claim for breach of contract does not preclude a party from bringing a claim for breach of the implied covenant of good faith and fair dealing when they are brought in the alternative." *Fantozzi v. Axsys Techs., Inc.*, No. 07-CV-2667(LMM), 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008). Accordingly, the question is whether, if BNYM should prevail in its arguments that it did not assume the contractual obligation to perform certain duties, these duties might nevertheless be implied, to avoid "depriv[ing] the other [party] of the right to receive the benefits under their agreement." *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1990).

In these trusts, the parties agreed to operate under the New York rule "that the duties of

an indenture trustee are strictly defined and limited to the terms of the indenture." *Elliott Assocs.*

*v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988) (collecting cases).

"'[N]o obligation can be implied which would be inconsistent with other terms of the contractual

relationship.'" *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 469 (S.D.N.Y.

2013) (quoting *Sheth v. N.Y. Life Ins. Co.*, 273 A.D.2d 72, 73 (1st Dep't 2000) (alteration

omitted)).   Under the PSA and Indentures, prior to the Trustee having knowledge of an Event of

Default, the Trustee had *no* duties other than its contractual duties.   That being the case, any

cause of action for breach of implied duties cannot stand.   *Accord CFIP Master Fund, Ltd. v.*

*Citibank, N.A.*, 738 F. Supp. 2d 450, 472-73 (S.D.N.Y. 2010).   After the occurrence of an Event

of Default, however, the careful circumscription of the Trustee's obligations no longer applies,

*Ellington*, 837 F. Supp. 2d at 192.   Accordingly, Plaintiffs' cause of action for breach of the

implied duty of good faith is dismissed only as it pertains to any allegations prior to the time the

Trustee became aware of an Event of Default.

## V.     The TIA

### A.  The TIA Creates a Private Right of Action

Defendant moves to dismiss Plaintiffs' first cause of action alleging violations of the

TIA, challenging first the existence of a private right of action under the TIA.   This argument has

been considered and rejected by a number of courts.   *See Fixed Income*, --- F. Supp. 3d at ---,

2015 WL 5244707, at *4 (collecting cases).   For substantially the same reasons articulated by

Judge Furman in the *Fixed Income* case, Defendant's argument is rejected.

### B.  The TIA Does Not Apply to PSA Trusts

The Second Circuit has held that Defendant is correct that the TIA does not "impose

obligations on the trustees of RMBS trusts governed by pooling and servicing agreements."

*Policemen v. BNYM II*, 775 F.3d at 155.  Because this Court is bound by the Second Circuit's decision, Plaintiffs' TIA claims are dismissed with respect to the Trusts that are governed by PSAs.[8]

### C.  The FAC States a Claim under the TIA as to the Indenture Trusts

Defendant finally moves to dismiss Plaintiffs' TIA claims as they pertain to the Indenture Trusts.  Defendant's motion is granted as to Sections 315(a) and 361(b) and denied as to the other claims.

#### 1.  Section 315(a)

Plaintiffs do not respond to Defendant's argument that Section 315(a) of the TIA does not provide the basis for a cause of action.  The text of the statute limits the indenture trustee's liability and allows that the indenture trustee "may conclusively rely . . . upon certificates or opinions conforming to the requirements of the indenture."  15 U.S.C. § 77ooo(a)(2).  Because Plaintiffs failed to respond the Defendant's argument, any claim that they might otherwise have articulated is deemed to be abandoned.  *Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) ("[A] partial opposition may imply an abandonment of some claims or defenses.")  Accordingly, BNYM's motion to dismiss the cause of action insofar as it relies on Section 315(a) is granted.  *Policemen v. BNYM I*, 914 F. Supp. 2d at 430.

#### 2.  Sections 315(b) and (c)

Defendant next moves to dismiss Plaintiffs' claim insofar as it relates to Sections 315(b) and (c), which require trustees to give notice to certificateholders and provide for enhanced duties following an event of default.  15 U.S.C. § 77ooo(b) and (c).  Defendant argues that

---

[8]     The Court is aware of the pending petition for *certiorari* in the Supreme Court, *see Ret. Bd. of Policemen's Annuity & Annuity & Benefit Fund of City of Chi. v. Bank of N.Y. Mellon*, No. 15-314 (filed Sept. 14, 2015), but unless and until the Second Circuit's decision is overruled, its decision is controlling.

Plaintiffs have not alleged an issuer default and therefore that BNYM's duties under these provisions were not triggered.  As discussed in Part I(A), *supra*, the FAC does allege issuer defaults as to the Indenture trusts; accordingly, Defendant's motion is denied.  *Cf. Policemen v. BNYM I*, 914 F. Supp. 2d at 431-32.[9]

### 3.   Section 316(b)

Defendant moves to dismiss Plaintiffs' claims under Section 316(b), which provides that "[T]he right of any [certificate]holder . . . to receive payment of the principal and interest . . . shall not be impaired or affected without the consent of such holder."  15 U.S.C. § 77ppp(b).  Plaintiffs contend that their rights were rendered effectively meaningless because they were unable "to receive payment in connection with defective mortgage loans for which BNY Mellon failed to take action to correct."  FAC ¶ 406.  BNYM counters that "Section 316(b) 'applies to the holder's *legal* rights and not the holder's *practical* rights to the principal and interest itself.'"  Def. Mem. at 30 (quoting *Magten Asset Mgmt. Corp. v. NW. Corp. (In re NW. Corp.)*, 313 B.R. 595, 600 (Bankr. D. Del. 2004) (emphasis in original)).  The statute "addressed earlier practices whereby majority bondholders – often controlled by insiders – used collective or majority action clauses to change the terms of an indenture, to the detriment of minority bondholders."  *BOKF, N.A. v. Caesars Entm't Corp.*, No. 15-CV-1561(SAS), 2015 WL 5076785, at *4 (S.D.N.Y. Aug. 27, 2015); *see also In re Trusteeship Created by Am. Home Mortg. Inv. Trust 2005-2*, No. 14-CV-2494(AKH), 2014 WL 3858506, at *23 (S.D.N.Y. July 24, 2014).  Although the Court is not unsympathetic to Plaintiffs' argument that BNYM's behavior hampered certificateholders' *ability* to receive payments to which they were otherwise entitled,

---

[9]     Even if the FAC did not allege that BNYM had knowledge of an Event of Default, the Court is persuaded by Judge Forrest's analysis in *Policemen v. BoA II* that "§ 315(b) speaks of 'defaults', without limiting that term to the defaults defined in the PSA."  943 F. Supp. 2d at 441; *see also VNB Realty*, 2014 WL 1628441, at *4 (same).

the text of the statute is clear – Section 316(b) does not provide Plaintiffs a cause of action in this case.[10]  Accordingly, Defendant's motion is granted as to Plaintiffs' claims under Section 316(b).  *Cf. Policemen v. BoA I*, 914 F. Supp. 2d at 432.

**VI.  The Streit Act**

Defendant moves to dismiss Plaintiffs' claims pursuant to the Streit Act, a little-used section of the New York Real Property Law.  The motion is granted, and Plaintiffs' sixth cause of action is dismissed.

Defendant argues that Plaintiffs have not alleged a violation of the Streit Act.  The parties focus their briefing on Section 126, which begins:

> No trustee shall hereafter accept a trust under any trust indenture or mortgage within the contemplation of this article or act as trustee thereunder unless the instrument creating the trust shall contain the following provisions, among others, which confer the following powers and impose the following duties upon the trustees . . . .

Section 126 then lists a number of terms that must be included in all such instruments.  Plaintiffs allege that BNYM did not comply with the Streit Act-required terms.  The FAC does not, however, allege that BNYM accepted a deficient indenture; accordingly, it does not state a claim under Section 126.

Plaintiffs' Streit Act claim also alleges that BNYM violated Section 127, the Streit Act's conflict-of-interest provision.  FAC ¶ 440.  Plaintiffs' assertion in this regard is brief – the FAC alleges: "BNY Mellon also violated the conflict of interest provision of the Streit Act by continuing to act as trustee despite having a financial interest in indemnification under the proposed settlement with Countrywide and Bank of America."  *Id.*  Defendants allege that the

---

[10]      The Court agrees with Judge Failla's analysis in *Marblegate Asset Management v. Education Management Corp.*, in which the court described as "unsatisfying the notion that Section 316(b) protects only against formal, explicit modification of the legal right to receive payment, and allows a sufficiently clever issuer to gut the Act's protections."  75 F. Supp. 3d 592, 613 (2014).  But "[t]he Court cannot accept an interpretation that is neither mandated by the statute's text nor remotely in conformity with the statutory purpose and legislative history."  *Id.* at 614.

Streit Act specifies the circumstances in which a trustee is deemed to have a conflict of interest; the Act's list does not contain indemnification agreements.  Def. Mem. at 38 (citing N.Y. Real Property Law § 127); *see also* N.Y. Real Property Law § 130-k(b).  Plaintiffs do not respond to Defendants' arguments; "[a]ccordingly, Plaintiffs are deemed to have abandoned this claim, and it is dismissed with prejudice."  *Policemen v. BNYM I*, 914 F. Supp. 2d at 430; *see also Jackson*, 766 F.3d at 196.[11]

## CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED IN PART and DENIED IN PART.  The Clerk of the Court is respectfully directed to terminate docket entry 34.

**SO ORDERED.**

**Date:  September 29, 2015**             **VALERIE CAPRONI**
**       New York, New York**             **United States District Judge**

---

[11]     Because Defendant's motion is granted as to the Streit Act claim, the Court does not address whether the Streit Act applies to RMBS trusts or whether it provides a private cause of action for damages.

20